## SUPREME COURT.

THE PEOPLE *ex rel.* CHARLES P. SANDERS agt. WILLIAM M. COLBORNE, Treasurer, &c.

A *county clerk* has authority to *tax costs* in special proceedings under the Revised Statutes, (on mandamus) although such costs are not provided for by the Code.

A *public officer* is entitled to *double costs* where he succeeds upon a proceeding by mandamus against him. And it seems that such costs may be awarded either as in *an action*, or a *proceeding upon mandamus*, under the Revised Statutes. The definition of an "action" considered.

The statute allowing double costs to public officers applies to acts of *nonfeasance*, as well as to *malfeasance*.

*Schenectady Special Term, February*, 1861.
MOTION for re-adjustment of costs.

S. W. JACKSON, *for relator.*
D. C. SMITH, *for defendant.*

POTTER, Justice. This case comes up upon proceedings for an alternative *mandamus* against the defendant, to require him to charge the several towns in the county of Schenectady with their respective portions of money paid

by the superintendent of the poor, chargeable to such towns respectively, during the preceding year, (1859) in pursuance of the provisions of the 1st Revised Statutes, 626, § 47.

The defendant made a return to such alternative writ, stating that the superintendent of the poor had made no report from which he (the defendant) could make such charges as were required. To this return the relator demurred. The demurrer was overruled at special term, and that order was affirmed on an appeal, brought by the relator to the general term, with costs.

The clerk of Schenectady county, on the adjustment of costs for judgment, allowed double costs, as was claimed by the counsel for the defendant, on the ground that the defendant was a public officer, and entitled thereto under the provisions of 2d Revised Statutes, 617, § 4, (24.) The relator now appeals from this adjustment.

The first objection raised by the relator was, that the county clerk, in such a case, had no power to adjust costs, inasmuch as the costs of such proceedings were not provided for by the Code; but were costs allowable, if at all, under the provisions of the Revised Statutes, which clerks of counties had no power to tax. I think this objection is not well taken. By the 65th section of the judiciary act, chap. 280, Laws of 1847, clerks of counties are, by virtue of their offices, made clerks of this court, and vested with all the powers of the clerks of the supreme court under the former system; and the 311th section of the Code recognizes this power. This was directly so held in the eighth district, at general term, in *Wheelock* agt. *Hotchkiss*, (18 *How. Pr. R.*, 469.) If the defendant is entitled to double costs, I think the clerk had the power to adjust them. (*See also Bortle* agt. *Gilman*, 19 *How. Pr. R.*, 3.)

The court of appeals have also settled the question now, that the Revised Statutes, allowing double costs, are not abrogated by the provisions of the Code, but are in force. (*See also Bortle* agt. *Gilman, supra.*) Besides, the 471st

section of the Code expressly excepts proceedings by *man-damus* from being affected by the provisions of the second part of the Code, which, it will be seen, contains the directions as to the manner of commencing actions, and also the provision as to costs in actions commenced under it.

The next objection raised to the adjustment is, that double costs are only allowed by the Revised Statutes in *actions;* and it is insisted that a proceeding by *mandamus* is not an action.   To determine this objection it becomes necessary, first : to ascertain what is meant by the use of the word, or term, *action*, in legal parlance.

Excluding the Code definition, at present, as inapplicable, and finding in the Revised Statutes no definition limiting its use from what it has ordinarily been understood to mean by the profession, by the common law authorities, and by examination of the elementary writers and law lexicons, we may assume that the common law meaning, or definition, remains still unchanged.

One of the oldest of English legal definitions, of " *action*," is that given by Lord COKE ; that " it is the form of a suit given by law for the recovery of that which is one's due, the lawful demand of one's right." ( *Co. Litt.*, 285, 285, *a.*) BLACKSTONE, traces his definition, back to the civil law; in which Cicero defines an *action*, to be " the means by which men litigate with each other." (3 *Blackstone Com.*, 117.)   BRACTON, I think, embodies the whole idea of an action much better, in the Latin expression, " *trinus actus, trium personarum*," which seems to include not only the *act* of a *plaintiff*, who makes a lawful demand, and the *act* of a *defendant*, in opposition ; but also, the *act* of a *court* in passing judgment between the parties.   This is full and comprehensive, and I think, best expresses our notion of a legal *action*, in the ordinary understanding of the term. This would include the less comprehensive, and less perspicuous definition of an action, given in the Code, (§ 2,) to wit : " An action, is an ordinary proceeding in a court of

justice, by which a party prosecutes another party, for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offence," as well as the more apt conclusion of Justice HARRIS, in *People agt. County Judge of Rensselaer*, (13 *How. Pr. R.*, 400,) in which he says, " any judicial proceeding which, if conducted to a termination, will result in a judgment, is an action." By the rule of construing statutes, we are bound to assume that the legislature in preparing the language of statutes, employed the terms, in the ordinary sense in which such language is understood by lawyers and courts. The Revised Statutes, have, as we shall see, in frequent instances, used the word " *suit*," as synonymous with *action*; and it was, and is every day's practice, (certainly before the Code,) among jurists and lawyers, when speaking of a legal proceeding, to use *action*, and *suit*, as synonymous terms. Indeed, *suit*, was the more general term of the two ; and much the most comprehensive; in fact suit includes an action. Lord COKE says, the word " *suit*," includes the *execution*, which the word " *action*," does not. " So, (says he,) if the body of a man be taken in execution, and the plaintiff releaseth all *actions*, yet he shall remain in execution ;" but " if he release all *suits*, the execution is gone." " And so note a diversity," &c. (*Co. Litt.*, 291, *a.*) In *Didier agt. Davison*, (10 *Paige R.*, 516, 517,) Chancellor WALWORTH says, " The word action when used in the Revised Statutes, is intended to designate a *proceeding in a court of law*. But when the word '*suit*' is used, in reference to legal proceedings by the revisors of the statute, it may apply to a *proceeding* either at law, or in equity." In the 2d Revised Statutes, 618, 619, and especially that portion which relates to costs, the word *suit*, is used as an intended synonym, for *action*, as follows : Section 38. " In suits against executors and administrators, in which the plaintiff shall recover costs," &c. Section 39. " In civil *suits* and proceedings, by or in the name of the people," &c., " the people shall be

liable for costs," &c.    Section 40.  " Where a suit or pro-
ceeding shall be instituted in the name of the people of
this state on the *relation* of any citizen, such relator shall be
liable for costs, in the same cases, and to the same extent,
as if such suit or proceeding had been commenced in his
own name."    Section 41.  " In all *suits* which may be com-
menced in the name of the people of this state, when the
debt," &c.    Section 42.  " In *suits* and *proceedings* upon
writs of *mandamus*, the supreme court may, in its discretion,
award or refuse costs to any party therein."    Whenever
the court so award costs, it means the costs allowed by
statute, unless it is otherwise expressed.

It is obvious from the very character of the proceedings
intended, by the language, " *suits*" and " *proceedings*," in the
sections above quoted, that *actions*, according to the defini-
tions we have above given, were intended.    I am, therefore,
clear in my view of its meaning, that the proceeding now
in question, was an *action* ; though I do not regard that
conclusion as even necessary for the purpose of determining
the right to costs in this case.    For that purpose, we need
not distinguish it from " a proceeding upon mandamus."
Either would entitle to costs, if the court so ordered.

The next objection taken to the adjustment, is, that the
proceeding is not brought against the defendant " for or
concerning the omission to do anything which it was his
official duty to perform."

I think the *facts* are against this objection.    The defend-
ant, as county treasurer, was charged in the alternative
*mandamus*, that it was his duty as such officer, in the
accounts kept by him with the several towns in his county,
respectively, to charge them, respectively, with certain por-
tions of money paid by the superintendent of the poor of
said county for the support of the poor of such towns ; as
required by statute ; and the said writ also charged the said
defendant, as such officer, among other things, as follows :
" and whereas, you, in disregard and neglect of the statute

in such case made and provided, have charged, &c." (setting forth how otherwise such charges were made.) " Now we therefore," &c., " do command you that immediately after the receipt of this writ, you charge," &c., " or, that you show cause," &c.

The defendant, in compliance with this mandate, made a return to the writ, showing cause. The relator demurred to the return; the demurrer was overruled, and, in effect, the return was held good; or, in other words, it was held that, as such officer, he had not omitted his duty. The result was a judgment in favor of the defendant, upon demurrer, in an *action* by *mandamus* against him as county treasurer, which is a public office, on a charge made for and concerning his omission to charge the several towns of his county in the manner required by statute, and which act of disregard, neglect and omission he was so charged with by the said *mandamus*. This act, the relator claimed, it was his official duty as such officer to have performed. The effect of the judgment is that he had performed his duty. This, it seems to me, is a charge, making an issue against a public officer for omitting to do his duty, and is clearly within the spirit, as well as the letter of the statute made for their protection, as now extended by the Revised Statutes of 1830. ( *See revisor's notes, vol.* 3, 2d ed., p. 798.)

The various decisions of the courts, that the statute allowing double costs to public officers did not apply to acts of nonfeasance, but only to malfeasance, were cases before the Revised Statutes extended the former provision. Such were the cases in 2 *Cow. R.*, 527 ; 5 *John. R.*, 182 ; 1 *Wend.*, 24.

The disbursement for verifying the return of the defendant I do not think was technically necessary; but it was a disbursement at the legal rate, incurred in good faith, and it doubtless *appeared to the clerk to be necessary.* (2 *R. S.,* 653, §7.) This authorized its allowance. The motion must be denied, and the taxation affirmed, with costs.